IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| ZANDE BARNACASCEL, <br><br> Petitioner, <br><br> vs. <br><br> LEROY KIRKEGARD, et al., <br><br> Respondents. | Cause No. CV 15-160-M-DLC-JCL <br><br><br> FINDINGS AND <br> RECOMMENDATION OF U.S. <br> MAGISTRATE JUDGE |

This case comes before the Court on Petitioner Zande Barnacascel's application for writ of habeas corpus under 28 U.S.C. § 2254. Barnacascel is a state prisoner proceeding pro se.

Barnacascel contends that his current custody is illegal because the sentence imposed on revocation of a suspended term is more burdensome than the sentence that could originally have been imposed. *See generally* Pet. (Doc. 1-1) at 1-9.

**I. Background**

In 2004, Barnacascel pled guilty to felony burglary, a violation of Mont. Code Ann. § 45-6-204(1) (2003). The maximum penalty for felony burglary was 20 years in prison. *Id.* § 204(3). The plea agreement noted that the State and Barnacascel agreed the appropriate sentence was a 20-year commitment to the Department of Corrections with 15 of those years suspended. Plea Agreement at 1

1

(Doc. 1-2 at 9). The agreement also provided, "I understand that the Court is not bound by this Agreement and may impose the maximum penalty for the offense(s) charged, but that if the Court chooses not to follow this plea bargain, I shall be so informed and allowed to withdraw my plea(s) of guilty." *Id.* at 5 (Doc. 1-2 at 13).

On February 28, 2005, Barnacascel was sentenced to serve 20 years in the custody of the Department of Corrections,[1] with 15 of those years suspended, *see* Judgment at 2 (Doc. 1-2 at 15), just as the plea agreement provided. The judgment stated that it conformed to the plea agreement. *Id.* at 4 (Doc. 1-2 at 17).

Barnacascel diplomatically states, "Over the years . . . there have been a lot of petitions for revocation of this sentence." Pet. (Doc. 1-1) at 1. According to the Montana Supreme Court, Barnacascel discharged his 5-year commitment term on May 21, 2009. He violated the conditions of his suspended sentence and, on July 14, 2010, the sentencing court revoked his 15-year suspended commitment to the DOC and reimposed a sentence of 15 years in prison, with all of that time suspended. Order at 1-2, *Barnacascel v. Kirkegard*, No. OP 15-0552 (Mont. Nov. 17, 2015), *available at* http://supremecourtdocket.mt.gov (accessed Mar. 10, 2016).

---

[1] A commitment to the custody of the Department of Corrections gives the Department discretion to decide whether to place the offender in prison, release him on conditions, or something in between. *See, e.g.*, Mont. Code Ann. § 46-18-201(3)(a)(iv). A DOC commitment is therefore less severe than a sentence of imprisonment. A suspended sentence—whether it is a suspended DOC commitment or a suspended prison term—is a release on conditions and involves supervision by a probation officer.

After the 15-year term was revoked and reimposed as a suspended prison term, Barnacascel arranged to have his supervision transferred to North Dakota. But he failed to appear there. He absconded, and his whereabouts were unknown for about three years. *Id.* at 2.

Barnacascel's current custody originates in the latest revocation. On August 26, 2014, he was sentenced to serve 15 years in prison with no possibility of parole. He also received 51 days' credit for time already served in custody before the revocation hearing was held. Revocation Judgment at 1-2 (Doc. 1-2 at 1-2).

## II. Claims

Barnacascel contends that the revocation court could not sentence him to 15 years in prison because the State, in the 2004 plea agreement, "agreed" on a DOC commitment of 20 years with 15 suspended. That agreement, he says, limited the court's authority to impose a greater sentence in any subsequent revocation.

Barnacascel explains that the plea agreement was governed by Mont. Code Ann. § 46-12-211(1)(b), so that he had a right to withdraw his plea if the sentencing court did not follow the agreement, *see id.* § 211(4). Since the court accepted the agreement and followed it, he concludes that the revocation court and the State breached the plea agreement by sentencing him to a revocation term of 15 years in prison with no parole, a stiffer penalty than 20 years in DOC custody with 15 suspended. He also claims that the judge who revoked his suspended sentence

3

could not declare him ineligible for parole and should have considered alternatives to incarceration. Pet. (Doc. 1-1) at 1-11.

### III. Analysis

Federal habeas corpus relief is not available for errors of state law. *Wilson v. Corcoran*, 562 U.S. 1, 5 (per curiam). In Barnacascel's case, there were no errors of state law. In fact, state law contradicts his arguments. Nor does the United States Constitution require Montana law to conform to Barnacascel's views.

The original sentence was imposed in accordance with the plea agreement. Based on the defendant's conduct, a revocation sentence revokes the original sentence and replaces it with a different sentence. The parameters of the revocation sentence are set not by the plea agreement but by the statute governing revocation, Mont. Code Ann. § 46-18-203. The statute applies "to any offender whose suspended or deferred sentence is subject to revocation regardless of the date of the offender's conviction and regardless of the terms and conditions of the offender's original sentence." Mont. Code Ann. § 46-18-203(9). This provision came into effect in 2003, before Barnacascel committed felony burglary, was in effect on each occasion when he faced revocation, and remains in effect today. Similarly, both when Barnacascel committed felony burglary and ever since, the statute has provided that a judge revoking a suspended sentence could "require the

4

offender to serve either the sentence imposed or any sentence that could have been imposed that does not include a longer imprisonment or commitment term than the original sentence." *Id.* § 203(7)(a)(iii).

In effect, Barnacascel reads the phrase "longer imprisonment or commitment term than the original sentence" to refer to the five-year unsuspended portion of the DOC commitment in the original judgment. But it was the suspended sentence that was revoked, and the suspended portion of the DOC commitment was 15 years. Barnacascel's 15-year prison term is not longer than the 15-year commitment term that was originally imposed in 2005. Prison is indeed a more severe sanction than DOC commitment, as Barnacascel points out, but that is what the statute contemplates when it limits only the maximum length of the revocation sentence. The phrase "any sentence that could have been imposed" includes a prison term, because the court could have rejected the plea agreement and imposed a prison term at the original sentencing hearing. Among the sentences that could originally have been imposed was a sentence that did not permit Barnacascel to be paroled. Mont. Code Ann. § 46-18-202(2). The revocation court specifically declined to give Barnacascel credit for any time he spent out of prison under supervision on the suspended term. *See* Mont. Code Ann. § 46-18-203(7)(b). Its decision also indicates that it had previously considered alternatives to incarceration, and when Barnacascel appeared before it the last time, it believed

5

there were no alternatives left. *See* Revocation Judgment at 2 (Doc. 1-2 at 2) ("The Court made a commitment to the Defendant 4 years ago and it intends to keep it.").

In addition to Barnacascel's argument being inconsistent with Montana law, the United States Constitution does not prohibit Montana's law. States, including the United States, routinely impose more severe consequences, within the parameters of the original sentence, on persons who fail to abide by the terms of the original sentence. That is exactly what happened here; Barnacascel's 15-year suspended DOC commitment was revoked and reimposed as a 15-year suspended prison sentence. When Barnacascel still refused to comply with the conditions that would have kept the sentence suspended, the 15-year suspended prison sentence was revoked and reimposed as a 15-year prison sentence. Lesser steps might have been appropriate too, but there was nothing inappropriate, much less unconstitutional, about this sequence of events. The petition should be denied.

## IV. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues

6

presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Barnacascel claims that the terms of his plea agreement limited the sentence and conditions that could be imposed on him years later when a suspended term was revoked. He is mistaken. State law provides otherwise, and the United States Constitution does not prohibit the State's law. Barnacascel does not make any showing that he was deprived of a constitutional right. A COA is not warranted.

Based on the foregoing, the Court enters the following:

## RECOMMENDATION

1. The Petition (Doc. 1-1) should be DENIED for lack of merit.

2. The Clerk of Court should be directed to enter by separate document a judgment in favor of Respondents and against Petitioner.

3. A certificate of appealability should be DENIED.

## NOTICE OF RIGHT TO OBJECT
## TO FINDINGS & RECOMMENDATION
## AND CONSEQUENCES OF FAILURE TO OBJECT

Barnacascel may object to this Findings and Recommendation within 14 days.[2] 28 U.S.C. § 636(b)(1). Failure to timely file written objections may bar a de

---

[2] As this deadline allows a party to act within 14 days after the Findings and Recommendation is "served," Fed. R. Civ. P. 6(d) applies, and three days are added after the time would otherwise expire.

novo determination by the district judge and/or waive the right to appeal.

<u>Barnacascel must immediately notify the Court of any change in his mailing address by filing a "Notice of Change of Address."</u> Failure to do so may result in dismissal of his case without notice to him.

DATED this 11th day of March, 2016.

                                       */s/ Jeremiah C. Lynch*
                                       Jeremiah C. Lynch
                                       United States Magistrate Judge